UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MOTOR TRANSPORT UNDERWRITERS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:06-cv-00219-LJM-WTL |
| SPECIALTY NATIONAL INSURANCE COMPANY, KEMPES, INC., KEMPER INSURANCE COMPANY, and LUMBERMANS MUTUAL CASUALTY COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on defendants', Specialty National Insurance Company ("SNIC"), Kempes, Inc. ("Kempes"), Kemper Insurance Company ("KIC"), and Lumbermans Mutual Casualty Company ("LMCC") (collectively, "Defendants"), Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)") for lack of subject matter jurisdiction or, alternatively, Motion to Stay Further Proceedings and to Compel Arbitration. Plaintiff, Motor Transport Underwriters, Inc. ("MTU"), filed this action against Defendants alleging, among other things, breach of contract. The Court has fully considered parties' arguments and, for the reasons discussed below, **DENIES** Defendants' Motion to Dismiss or, Alternatively, Motion to Stay Further Proceedings and to Compel Arbitration.

**I. BACKGROUND**

For the purposes of these motions, the Court accepts as true the well-pleaded factual

allegations from the Complaint. MTU is in the business of providing insurance solutions to motor carriers. Compl. ¶ 11. Defendants are in the business of providing various lines of insurance. Compl. ¶¶ 12-15. In January 2001, MTU and the Defendants entered into negotiations for the purpose of creating a business arrangement.. Compl. ¶ 16. Under this proposed business arrangement ("Business Arrangement"), MTU would become Defendants' exclusive insurance program manager regarding the solicitation and placement of specialty lines insurance for motor carriers. *Id.* Among other things, "MTU would solicit customers and bind insurance coverage for Defendants' customers, issue insurance contracts in the name of SNIC, file evidence of financial responsibility, collect premiums, report and manage claims and otherwise provide service to insurance customers, exclusively on behalf of the Defendants." Compl. ¶ 17. Further, under the proposed arrangement, Defendants were not allowed to enter into any similar program manager arrangement. Compl. ¶ 22.

In September 2001, with the intent to formalize the proposed Business Arrangement, Defendants provided MTU with an initial draft version of the agreement between the parties, entitled "Program Manager's Agreement" ("PMA-I"). Compl. ¶ 23. Plaintiffs have attached a copy of the PMA-I to the Complaint. Compl. Ex. A. PMA-I included an arbitration clause, Compl. Ex. A, Art. XVI, and also provided for a 180-day termination notice. Compl. Ex. A, Art. XIII. As of September 2001, the parties finalized their Business Arrangement, evidenced by Defendants' authorizing MTU to commence selling insurance. Compl. ¶ 24. However, PMA-I was not finalized. *Id.*

MTU began performing under the Business Arrangement, selling its first insurance contract on September 25, 2001. Compl. ¶ 28. MTU ultimately sold eight insurance contracts pursuant to the Business Arrangement during 2001, the final contract being sold with an effective date of

December 31, 2001. Compl. ¶¶ 29-30. Through all relevant time in 2001, the parties continued to negotiate terms of PMA-I that did not affect or inhibit the Business Arrangement. Compl. ¶ 31.

In furtherance of the parties' negotiations regarding PMA-I, on or about October 3, 2002, Defendants provided MTU with another draft of the PMA ("PMA-II"). Compl. ¶ 35. MTU has attached a copy of PMA-II to the Complaint as Exhibit B. PMA-II included the same arbitration provision as PMA-I. Compl. Ex. B, Art. XV. Without highlighting the change, Defendants reduced the termination notification period from 180 days to thirty days. Compl. ¶ 36.

On or about February 1, 2002, MTU learned that one of Defendants' sister companies, Kemper Risk Management ("KRM"), was soliciting the same type of insurance customers that MTU was soliciting pursuant to the Business Arrangement. Compl. ¶ 37. Defendants then restricted MTU from soliciting insurance for any prospective customer that KRM had contacted. Compl. ¶ 38.

On February 12, 2002, Defendants notified MTU that Defendants were terminating the parties' Business Agreement pursuant to the thirty-day notice provision in PMA-II. Compl. ¶ 39. MTU then filed this diversity action alleging, among other things, breach of contract..

## II.  STANDARD

Defendants seek to dismiss this case under Rule 12(b)(1), and alternatively to stay proceedings and compel arbitration. In essence, the standard for a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is the same as the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). *See Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and the inferences reasonably draws from those

allegations. *See Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir. 1994). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### III. DISCUSSION

The issue before the Court is whether or not the parties agreed to arbitrate the dispute presented in the Complaint. Under Indiana Law, valid arbitration agreements are recognized and enforced.[1] IND. CODE § 34-57-2-1. *See also Chesterfield Management, Inc. v. Cook*, 655 N.E.2d 98, 102 (Ind. Ct. App. 1995) ("Indiana recognizes a strong policy favoring enforcement of arbitration agreements . . . ."). Both PMA-I and PMA-II contain the following arbitration clause:

> **Binding Arbitration:** If a dispute between Company and Manager, arising out of any provision in this Agreement, or concerning its interpretation or validity, whether arising before or after the termination of this Agreement, whether sounding in contract or tort, has not been resolved through negotiation, the Parties agree to submit to the decision of a board of arbitration composed of two arbitrators and an umpire (the "Board") meeting at a site in Scottsdale, Arizona.

Compl. Ex. A, Art. XVI, Ex. B, Art. XV. Therefore, if PMA-II is a valid, enforceable contract, the Court would be required to dismiss the case and submit it to arbitration. However, for the reasons stated below, the Court cannot find that PMA-II is a valid, enforceable contract.

In its Complaint, MTU makes multiple allegations regarding proposed business

---

[1] Defendants point to a choice of law provision in PMA-II. The provision states that Arizona law shall control all disputes arising under the agreement. The Court declines to enforce the provision and will apply Indiana law for the purposes of this motion because the Complaint alleges the agreement followed by the parties was oral, and that contract was formed in Indiana. The Court recognizes, however, that Arizona law is consistent with Indiana with respect to enforcing arbitration agreements. *See* ARIZ. REV. STAT. § 12-1501 (West 2006).

arrangements, and the nature of both PMA-I and PMA-II. Specifically, MTU alleges that the parties had an oral agreement, namely the Business Arrangement, and that the parties, "with the intent to formalize the . . . Business Arrangement, [drafted an initial] version of a document, entitled "Program Manger's Agreement." Compl. ¶¶ 16, 23. The Complaint further alleges negotiations regarding the Business Agreement, an oral agreement, were finalized, but that negotiations regarding terms of PMA-I not affecting the oral agreement continued. Compl. ¶¶ 24, 31. Indeed, the Complaint states that notwithstanding the oral agreement being finalized, "the parties had not finalized the [Program Manager's Agreement]." Compl. ¶ 24.

PMA-II was drafted in furtherance of the negotiations between the parties, Compl. ¶ 35, but nowhere in the Complaint does the Plaintiff allege that PMA-II was a signed, final expression of the Parties' intent, or that PMA-II was a valid, enforceable contract. Therefore, the fact that PMA-II has an arbitration clause is irrelevant because, taking the facts of the Complaint as true, PMA-II was not an enforceable contract. According to the Complaint, the only enforceable contract between the parties is the Business Agreement. Compl. ¶ 46.

"A court cannot order arbitration unless a valid contract to arbitrate is found . . . ." *Flynn v. AerChem, Inc.*, 102 F.Supp.2d. 1055, 1059 (S.D. Ind. 2000) (citing *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997)). *See also St. John Sanitary Dist. v. Town of Schererville*, 621 N.E.2d 1160, 1161-62 (Ind. Ct. App. 1993) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.") (citations omitted). Based on the facts as alleged in the Complaint, the only contract that could include a controlling arbitration clause for this dispute is the Business Agreement, an oral agreement between the parties. However, the "existence of an oral contract, its terms, and the intent

5

of the parties is a question fact." *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 369 (7th Cir. 1998); *see also Tuthill Corp. Fill-Rite Div. v. Wolfe*, 451 N.E.2d 72, 77 (Ind. Ct. App. 1983) ("The terms of an oral contract are a matter to be determined by the jury."). Consequently, this Court cannot dismiss this case pursuant to an arbitration clause that may or may not exist; the existence of such a clause is a question of fact. Therefore, an order dismissing or staying this case is improper at this time.

## IV.  CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss or, Alternatively, Motion to Stay Further Proceedings and to Compel Arbitration is hereby **DENIED**.

IT IS SO ORDERED this 30th of June, 2006.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed to:

Bryan Harold Babb
BOSE MCKINNEY & EVANS, LLP
bbabb@boselaw.com

David J. Fischer
WILDMAN HARROLD ALLEN & DIXON
fischer@wildmanharrold.com

Paul Keller Freeborn
WILDMAN HARROLD ALLEN & DIXON LLP
freeborn@wildmanharrold.com

Angela L. Hamm
KRIEG DEVAULT
ahamm@kdlegal.com

Scott Stuart Morrisson
KRIEG DEVAULT
smorrisson@kdlegal.com

C. Daniel Motsinger
KRIEG DEVAULT, LLP
cmotsinger@kdlegal.com

Craig Eldon Pinkus
BOSE MCKINNEY & EVANS, LLP
cpinkus@boselaw.com

George E. Purdy
BOSE MCKINNEY & EVANS
gpurdy@boselaw.com